# SUPREME COURT OF THE STATE OF NEW YORK
## *Appellate Division, Fourth Judicial Department*

**1040**

**CA 12-01806**

PRESENT: SCUDDER, P.J., CENTRA, CARNI, AND LINDLEY, JJ.

---

CHERYL FOLEY AND WILLIAM FOLEY,
PLAINTIFFS-RESPONDENTS,

V                                                    MEMORANDUM AND ORDER

WEST-HERR FORD, INC., ET AL., DEFENDANTS.
-----------------------------------------------
TIMOTHY B. HOWARD, SHERIFF, COUNTY OF ERIE,
APPELLANT.

---

MICHAEL A. SIRAGUSA, COUNTY ATTORNEY, BUFFALO (KENNETH R. KIRBY OF COUNSEL), FOR APPELLANT.

PAUL WILLIAM BELTZ, P.C., BUFFALO (DEBRA A. NORTON OF COUNSEL), FOR PLAINTIFFS-RESPONDENTS.

---

Appeal from an order of the Supreme Court, Erie County (Kevin M. Dillon, J.), entered January 27, 2012. The order denied the motion of Timothy B. Howard, Sheriff, County of Erie, for an award of poundage.

It is hereby ORDERED that the order so appealed from is unanimously reversed on the law without costs, the motion is granted and plaintiffs are directed to pay Timothy B. Howard, Sheriff, County of Erie, $24,500 as poundage pursuant to CPLR 8012 (b) (1), (2).

Memorandum: Timothy B. Howard, Sheriff of the County of Erie (Sheriff), appeals from an order that denied his motion for an award of poundage (*see generally* CPLR 8012 [b]). Plaintiffs commenced the underlying negligence and products liability action seeking damages for injuries sustained by plaintiff Cheryl Foley in a motor vehicle accident. By agreement dated September 30, 2009 (2009 Agreement), plaintiffs and defendants "agree[d] *to settle* the . . . case on or before December 15, 2009" in accordance with three enunciated terms: defendant Ford Motor Company would pay plaintiffs $650,000 on behalf of all defendants; plaintiffs agreed to accept that sum in full satisfaction of all claims against defendants; and plaintiffs agreed to execute a general release and a stipulation of discontinuance and defendants would make payment in accordance with CPLR 5003-a (emphasis added).

Despite the 2009 Agreement, the parties had unresolved issues concerning potential liens and the language of the general release. In March 2010, the attorney for defendants requested "a pretrial conference for purposes of *finalizing the settlement*" of the

underlying action (emphasis added). Plaintiffs sent proof that any potential liens had been resolved, but the parties continued to disagree on the language of the release. Supreme Court scheduled a conference for June 2011, noting that, "if the parties [could not] reach an agreement as to the language of the release," the matter would be restored to the trial calendar. Despite the continued disagreement on the terms of the release, plaintiffs' attorney filed a judgment for $726,611 on July 5, 2011 pursuant to CPLR 5003-a.

Plaintiffs' attorney thereafter enlisted the services of the Erie County Sheriff's Office (Sheriff's Office) to serve executions and notices of levy on two banks as garnishees of defendants, West-Herr Ford, Inc. and Ford Motor Company. Those documents were served upon the garnishees on July 12, 2011. On July 21, 2011, the Sheriff's Office was allegedly informed by plaintiffs' attorney "that the executions had achieved their desired effect, and that the defendants had agreed to settle the matter." Plaintiffs' attorney was then informed that the Sheriff's Office would nevertheless be seeking poundage in the amount of $24,500 pursuant to CPLR 8012 (b) (1). The next day, a stipulated order was entered upon the "joint application" of plaintiffs and defendants, pursuant to which "the instant action remain[ed] settled pursuant to the terms of the [2009 Agreement]"; the judgment filed July 5, 2011 was "deemed invalid from its inception" and "deemed null and void"; and the executions and notices served by the Sheriff were "deemed to be null and void." On July 25, 2011, the Sheriff's Office received a copy of that stipulated order from one of the garnishees.

The Sheriff thereafter moved for an order awarding the payment of poundage pursuant to CPLR 8012. We conclude that the court erred in denying that motion. " 'Poundage is a fee awarded to the Sheriff in the nature of a percentage commission upon moneys recovered pursuant to a levy or [an] execution of attachment' . . . The Sheriff's right to receive poundage fees is wholly statutory . . . , and the statute must be strictly construed . . . Under the statute, the Sheriff is entitled to poundage fees 'for collecting money by virtue of an execution' (CPLR 8012 [b] [1])" (*Famous Pizza v Metss Kosher Pizza*, 119 AD2d 721, 721). Although it is undisputed that the Sheriff did not actually collect any money, an award of poundage may still be made where, inter alia, "a settlement is made after a levy by virtue of an execution" (*id.*; *see* CPLR 8012 [b] [2]; *Solow Mgt. Corp. v Tanger*, 10 NY3d 326, 330; *Personeni v Aquino*, 6 NY2d 35, 38).

Based on the references to the 2009 Agreement in letters to the court and between the attorneys for the parties, we conclude that the 2009 Agreement did not constitute a final settlement but, rather, "was merely an agreement to agree sometime in the future" (*Sterling Fifth Assoc. v Carpentille Corp., Inc.*, 10 AD3d 282, 284). Even assuming, arguendo, that the 2009 Agreement constituted an actual settlement, we nevertheless conclude that the Sheriff is entitled to poundage because, after plaintiffs filed the judgment and served the executions and notices of levy, the parties entered into a subsequent agreement to apply jointly to the court to have the judgment vacated. Moreover, where, as here, "payment by the debtor is made directly to the

creditor after a sheriff levies, the payment constitutes a settlement, and the sheriff will be entitled to poundage" (*Kurtzman v Bergstol*, 62 AD3d 757, 758; *see Cabrera v Hirth*, 87 AD3d 844, 847; *cf. Alvarez v Brooklyn Hosp.-Caledonian Hosp*., 255 AD2d 278, 279-280).  Pursuant to the unambiguous language of the statute, the Sheriff is entitled to $24,500 in poundage based on the settlement amount of $650,000 (*see* CPLR 8012 [b] [1], [2]).

We reject the contention of plaintiffs that an award of poundage to the Sheriff is inequitable.  The legislative intent in enacting the statute was that, "when a party has made use of the services of the Sheriff's office in the pursuit of a claim, and he [or she] later satisfies that claim by means of a settlement, the Sheriff is entitled to his [or her] poundage whether he [or she] has actually made any collections or not" (*Matter of Pearson*, 72 Misc 2d 995, 997-998). " '[T]o permit plaintiffs to succeed [in opposing the Sheriff's motion] would create a dangerous precedent whereby a party might avoid poundage fees' " by stipulating that the judgment that was the subject of the execution was void but the underlying action remained settled, " 'after using the process of our courts and the services of the Sheriff's office.  This was not the intent of the Legislature.  Such an interpretation would do violence to the letter and spirit of the statutory provisions here in question' " (*id.* at 998).

We likewise reject the further contention of plaintiffs that they should not be liable for the payment of poundage.  Although "CPLR 8012 (b) is silent on th[e] question" concerning who is liable to pay poundage where, as here, a settlement has occurred after levy (*Cabrera*, 87 AD3d at 847-848), "[i]t has long been customary that where a sheriff levies against a defendant's property and the matter is thereafter settled, the judgment creditor is liable to the sheriff for the payment of poundage fees as the party who invoked the sheriff's services" (*id*. at 849).  We see no basis to deviate from the customary practice, and we thus conclude that plaintiffs are liable to pay the award of poundage to the Sheriff.

Based on our resolution, we see no need to address the Sheriff's remaining contentions.

Entered:  November 8, 2013                    Frances E. Cafarell
                                              Clerk of the Court